IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTONIO FIELDS, | ) | CASE NO. 1:15CV2644 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| ALAN LAZAROFF, *Warden*, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Antonio Fields ("Petitioner" or "Fields") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. Fields is detained at the Mansfield Correctional Institution, having been found guilty by a Lorain County, Ohio, Court of Common Pleas jury of twelve counts of kidnapping, each with a repeat violent offender specification (Counts 1, 2, 5-14); one count of aggravated robbery and one count of aggravated burglary, with repeat violent offender specifications (Counts 15, 16); one count of assault (Count 17); and one count of obstructing official business (Count 18). Doc. 8-1, pp. 19-20.[1] *State v. Fields*, Case No. 10CR081864 (Lorain Cty. Common Pleas Ct., filed June 14, 2013). Prior to sentencing, the trial court merged Counts 1 and 8; 2 and 9; 5 and 12; 6 and 13; 7 and 14; 15 and 8, 9 and 10; 16 and 8, 9 and 10; and 18 and 17, and sentenced Fields to seven years on Count 8, five years on Count 9, five years on Count 10, three years each on Count 11, 12, 13 and 14, and one year on Count 17, to be served consecutively, for an aggregate prison sentence of 30 years. Doc. 8-1, pp. 21-24.

---

[1] Doc. page citations are to ECF Doc. page numbers. As set forth below, the state Court of Appeals subsequently vacated the aggravated robbery conviction.

On December 18, 2015, Fields filed his Petition for Writ of Habeas Corpus setting forth one ground for relief. Doc. 1, pp. 6, 17. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Fields' sole ground for relief is procedurally defaulted. Thus, the undersigned recommends that Field's Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED**.

## I. Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also* Railey v. Webb, 540 F. 3d 393, 397 (6th Cir. 2008).

### A. State Court Action

#### 1. Underlying Facts

The following summary of underlying facts is taken from the opinion of the Lorain County Court of Appeals, Ninth Appellate District of Ohio:[2]

> {¶ 2} On November 20, 2010, Mr. Fields and his girlfriend, Tracey K., were involved in an argument at her home after she ended their relationship. According to Tracey, Mr. Fields left her home and returned several hours later. Upon his return, he resumed arguing with her and hit her in the face as she was lying down with her four-year-old son, M.N., in the downstairs living room. Tracey yelled for the assistance of her sister, Wanda M., who was upstairs in a bedroom with another sister, Shelli K., and several children. Mr. Fields continued to hit Tracey so hard that she urinated. He also bit her on the back of her neck. According to Wanda, after she and Shelli came to their sister's aid, both she and Mr. Fields went into the kitchen where he hit her in the face causing her to fall to the ground and injure her elbow.
>
> {¶ 3} Mr. Fields, Tracey, M.N., Wanda, and Shelli proceeded upstairs. According to Shelli, she went to an upstairs bedroom with Tracey and M.N. prior to Mr. Fields and Wanda coming upstairs. Wanda testified that she was behind Mr. Fields as he went upstairs. Wanda's two daughters, six-year-old A.K. and eight-year-old O.K., were in the

---

[2] Fields has not demonstrated by clear and convincing evidence that the state court's findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also* Railey, 540 F. 3d at 397.

bedroom closet crying and trying to hide. Shelli held her two-month-old niece, J.K., in her arms. After all the individuals were in the bedroom, Mr. Fields told them that this was a "hostage situation" and threatened to shoot all of them except the infant. He indicated to the eight-year-old that she would be the first one shot. Mr. Fields demanded any personal property that the victims had, including their debit cards and accompanying access codes, money, and cell phones. He next proceeded to hit both Shelli and Tracey. As he punched Shelli in the head, he struck the infant in the head with his forearm. After Tracey took the baby from her, Mr. Fields continued to punch Shelli in the head. Tracey's four-year-old son was also struck in the face when Mr. Fields swung at his mother from across the bed.

{¶ 4} With all of the victims in the room, Mr. Fields placed two phone calls. In one call, he asked for a "hammer and seven burners," which is slang for a gun and seven bullets. In another call, he invited men to come over to the house to have sex with the victims for money since the women had no money to give him. Mr. Fields went back downstairs several times, which gave the victims an opportunity to place several 911 calls on a cell phone Wanda hid from him under the infant's carrier. The victims reported that they could hear glass breaking and things thrown around the house after he went downstairs.

{¶ 5} When the police arrived, Mr. Fields held the bedroom door closed. He told the responding officers that they would need to shoot their way in and that there were women and children in the room. With the assistance of another officer, Officer Erick Gonzalez was able to open the door wide enough to fire his taser at Mr. Fields. The officers eventually gained entry to the bedroom where they wrestled with Mr. Fields. Officer Gonzalez sustained a laceration to his lower right leg when he struck a dresser while attempting to subdue him.

Doc. 8-1, pp. 110-128; *State v. Fields*, 2014WL6865582 (Ohio Ct. App. Dec. 8, 2014).

### 2. Procedural History

On December 30, 2010, a Lorain County Grand Jury issued an indictment charging Fields with seven counts of kidnapping, R.C. 2905.01(A)(2), each with a repeat violent offender specification; seven counts of kidnapping, R.C. 2905.02(B)(2), each with a repeat violent offender specification; one count of aggravated robbery, R.C. 2911.01(A), with a repeat violent offender specification; one count of aggravated burglary, R.C. 2911.11(A), with a repeat violent offender specification; one count of assault, R.C. 2903.13, and one count of obstructing official business, R.C. 2921.31. Doc 8-1, pp. 3-9. Fields, through appointed counsel, entered a plea of not guilty and the case was set for trial. *Id*, p. 10. The trial court appointed new counsel on April 13, 2012. *Id*., p. 11. Fields, through counsel, filed a plea of not guilty by reason of insanity at

3

the time of the offense and a motion requesting the trial court determine his competency to stand trial. *Id*. p. 12-15. The trial court ordered an evaluation by the Lorain County Forensic Center and thereafter adopted the report finding that Fields was sane at the time of the offense and competent to stand trial. *Id*. pp. 16-17.

The case proceeded to trial and the jury found Fields guilty of twelve counts of kidnapping, each with a repeat violent offender specification (Counts 1, 2, 5-14); one count of aggravated robbery and one count of aggravated burglary, with repeat violent offender specifications (Counts 15, 16); one count of assault (Count 17); and one count of obstructing official business (Count 18). Doc. 8-1, pp. 19-20. Prior to sentencing, the trial court merged Counts 1 and 8; 2 and 9; 5 and 12; 6 and 13; 7 and 14; 15 and 8, 9 and 10; 16 and 8, 9 and 10; and 18 and 17, and sentenced Fields to seven years on Count 8, five years on Count 9, five years on Count 10, three years each on Count 11, 12, 13 and 14, and one year on Count 17, to be served consecutively, for an aggregate prison sentence of 30 years. Doc. 8-1, pp. 21-24. The court also found him to be a Tier III child victim offender. *Id*. p. 22.

**B. Direct Appeal**

On April 28, 2014, Fields, through new counsel, appealed to the Ohio Court of Appeals. *Id*. p. 38. In his brief, he raised the following assignments of error:

> 1. The verdicts for Kidnapping as the crimes were defined by the court, in counts one, two, five, six and seven and Aggravated Robbery, as delineated in count fifteen, were against the weight of the evidence.
>
> 2. The verdicts for Kidnapping in counts seven through fourteen were against the weight of the evidence.
>
> 3. The multiple-count provision of R.C. 2941.25 was violated when the trial court ran the sentences consecutively to one another.
>
> 4. The trial court imposed a cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution by sentencing Fields to a prison term of thirty years.

4

*Id*. p. 42.  On December 10, 2014, the Ohio Court of Appeals sustained in part Fields' first assignment of error finding that, as to the aggravated robbery count, there was insufficient evidence to support his conviction.  *Id*. p. 113.  All other assignments of error were overruled and the case was remanded to the trial court to vacate the aggravated robbery conviction.[3]  *Id*. pp. 113-128.  Fields did not appeal to the Ohio Supreme Court.

### C.  App. R. 26(B) Application to Reopen Direct Appeal

On March 3, 2015, Fields, *pro se*, filed a timely application to reopen his direct appeal. *Id*. p. 129.  In his brief, he asserted the following assignment of error:

> Appellate counsel's deficient performance prejudice[d] Mr. Fields, because it resulted in a[] different outcome on direct appeal; than the one he is entitled to. Counsel's failure to raise a "dead-bang winner" on appeal, that is both obvious from the trial record, and one which would have resulted in reversal on appeal; diminished Field's ability to present his case in the face of "the intricacies of the law and advocacy of the public prosecutor," *United States v. Ash*, 413 U.S. 300, 309 (1973)[.]

*Id*. p. 130.  On April 21, 2015, the Ohio Court of Appeals denied Fields' application, stating that Fields failed to show that his appellate counsel was ineffective for not raising a sufficiency argument as to his aggravated burglary conviction and failing to show that there was a reasonable probability that such an argument would have been successful.  *Id*., p. 139.

On August 13, 2015, Fields filed a motion for reconsideration.  *Id*. p. 141.  On August 13, 2015, the state Court of Appeals denied Fields' motion because it was untimely and he did not show good cause for filing it late.  *Id*. pp. 149-150.  Fields did not appeal either ruling to the Ohio Supreme Court.

### D. Petition to Vacate or Set Aside Conviction or Sentence

---

[3]  The Court of Common Pleas docket entry vacating the aggravated robbery conviction noted that it did not affect Fields' sentence since the court had imposed no sentence on the aggravated robbery count (Count 15), having merged Count 15 and Counts 8, 9 and 10.

5

On September 15, 2015, Fields, *pro se*, filed a Petition to Vacate or Set Aside Judgment of Conviction or Sentence and a Motion for Delayed Post-Conviction Relief in the state trial court. *Id*., pp. 151, 154. He raised the following claim for relief:

> 6th Amendment Ineffective Assistance of Counsel, and 14th Amendment Due Process, and Equal Protection of Laws.
>
> > Supporting Facts: Lawyer did not use the Preliminary Hearing transcript to impeach state witness Wanda Meadows.

*Id*., p. 155. On September 29, 2015, the trial court denied Fields' petition as untimely and found that he did not meet the statutory requirements to file his petition late. *Id*., p. 163. Fields did not appeal this ruling.

### E. Federal Habeas Petition

On December 15, 2015, Fields, *pro se*, filed his Petition for a Writ of Habeas Corpus. Doc. 1. He listed the following ground for relief:

> **Ground One**: Appellate counsel's deficient performance prejudice[d] Petitioner, because it resulted in a[] different outcome on direct appeal than [t]he one he is entitled to. Counsel's failure to raise a "dead-bang winner" on appeal, that is both obvious f[r]om the trial record, and one which would have resulted in reversal on appeal; diminished Field's ability to present his case in the face of the "intricacies of the law and advocacy of the public prosecutor."
>
> > **Supporting Facts**: The state prosecutor failed as a matter of law, to prove beyond a reasonable doubt that the Petitioner committed the crime of aggravated burglary per Revised Code 2911.11(A). The record in Petitioner's case reflects[] that Petitioner did not trespass into the residence by force, stealth, or deception with purpose to commit any criminal offense. The record supports the fact the Petitioner is always welcomed to the residence, and is even free to come and go as he pleases. The incidents which occurred in the residence, i.e. kidnappings, assault, etc. is merely incidental; resulting in the escalating argument between Ms. Kidd and Petitioner.

Doc. 1, p. 17. On April 8, 2016, Respondent filed a Return of Writ. Doc. 8. Fields did not file a Traverse. In his Return of Writ, Respondent argues that Fields' sole ground for relief is procedurally defaulted and fails on the merits. Doc. 8, pp. 8-16.

## II. Legal Standard

6

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  28 U.S.C. § 2254; *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies when state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

**Exhaustion.**  A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6  (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.

7

*McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees,* 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams,* 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id*.  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams,* 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin,* 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"  *Williams,* 460 F.3d at 806 (citing *O'Sullivan,* 526 U.S. at 848).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Id*.  While the exhaustion requirement is technically satisfied because

there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman,* 501 U.S. at 750.

### III. Fields' sole ground for relief is procedurally defaulted

Fields' sole ground is procedurally defaulted because, although he raised his claim of ineffective assistance of appellate counsel in his Rule 26(B) Application, he never appealed the Ohio Court of Appeals' denial of his Application to the Ohio Supreme Court. *See Williams,* 460 F.3d at 806 (a claim is procedurally defaulted when a petitioner failed to raise it in state court and pursue it through the state's ordinary appellate review procedures and state law no longer permits the petitioner to raise the claim); *O'Sullivan,* 526 U.S. at 848.

To overcome the procedural bar, Fields must show cause for his default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if his claim is not considered. *Coleman,* 501 U.S. at 750.  For cause, Fields contends that he was unable to timely appeal to the Ohio Supreme Court because the Lorain County Clerk of Court negligently mailed the state Court of Appeals' decision to Fields' former appellate lawyer, despite the fact that Fields was no longer represented by that lawyer and had filed his application *pro se*.  Doc. 1, p. 15.  Because he did not timely receive the Ohio Court of Appeals' decision, Fields asserts, he missed the deadline to appeal to the Ohio Supreme Court and the Ohio Supreme Court Rules of Practice preclude him from filing a delayed appeal on a Rule 26(B) Application denial.  Doc. 1, pp. 16-17.

Even if Fields' assertion could constitute cause for his procedural default, he cannot show actual prejudice that resulted from an alleged violation of federal law, which he must do. *Coleman*, 501 U.S. at 750. Fields argues that his appellate counsel was ineffective for failing to argue that the state did not prove, as a matter of law, that he committed aggravated burglary per R.C. § 2911.11(A). Doc. 1, p. 17. R.C. § 2911.11(A) provides,

> No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
>
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
>
> (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

Fields submits, "The record supports the fact the Petitioner is always welcomed to the residence, and is even free to come and go as he pleases." Doc. 1, p. 17. Thus, he argues, he did not "trespass into the residence by force, stealth, or deception with purpose to commit any criminal offence." Doc. 1, p. 17.

The undersigned disagrees. As the Ohio Court of Appeals explained, criminal trespass occurs when one "[k]nowingly enter[s] or *remain[s]*" on the land or premises of another[.]" R.C. § 2911.21(A)(2) (emphasis added); Doc. 8-1, p. 139 (Ohio Court of Appeals' decision denying Field's Rule 26(B) Application, explaining, "Appellant concedes that there is evidence that he trespassed because he did not comply when the residents asked him to leave."); Doc. 8-1, p. 133 (Fields' brief in support of his Rule 26(B) Application stating, "Shelli Kidd corroborated both Wanda's and Tracey's testimony that they told him to leave more than once."). Fields' argument, like his argument before the state Court of Appeals, is "focused solely on his actions and intent when he entered the residence rather than what occurred once he was inside[.]" Doc.

10

8-1, p. 139. He does not advance any argument that he cannot be found guilty of trespass when he remained in the house of another when he was asked to leave, and he concedes that he remained after he was asked to leave.

Moreover, R.C. § 2911.11(A) makes clear that trespass can occur in a separately secured or separately occupied portion of an occupied structure. Fields does not challenge the Ohio Court of Appeals' finding that, after he violently attacked one victim who then fled up the stairs, Fields followed the victim upstairs, entered a bedroom where the remaining victims were gathered (including infants and children hiding in a closet), closed the door to that bedroom now containing all the victims, declared a "hostage situation," then demanded money and personal property. *See Fields*, 2014WL6865582, at *1. In his brief in support of his Rule 26(B) Application, Fields even argues, "the actual restraint of [the victims'] liberty by Fields didn't occur until everyone was in the bedroom; where Fields continued to assault Tracy, as well as others in the room." Doc. 8-1, p. 133. In short, Fields does not demonstrate actual prejudice from his appellate counsel's failure to raise sufficiency of the evidence on the charge of aggravated burglary.

Nor can it be said that there is manifest injustice, i.e., "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (6th Cir. 1995). Fields does not claim to be actually innocent and he

11

offers no new reliable evidence that was not presented at trial. His sole ground for relief is procedurally defaulted and he does not overcome the procedural bar.

### IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Fields' Habeas Petition be **DISMISSED** because his sole ground for relief is procedurally defaulted.

Dated: August 2, 2016

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).